# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**COOPERATIVA DE SEGUROS MULTIPLES,**

   **Plaintiff,**

**v.**             **Case No:  6:12-cv-1005-Orl-22GJK**

**B.Q., ANDREA C. RAMON, HENRY PAUL
RAMON, MARIO ALBERTO QUIROGA,**

   **Defendants.**

---

## REPORT AND RECOMMENDATION

This cause came on for consideration, without oral argument, on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION REQUESTING LEAVE OF COURT TO DEPOSIT FUNDS WITH THE CLERK OF THE COURT** (Doc. No. 16-3) |
| **FILED:** | **February 7, 2013** |

**THEREON** it is **RECOMMENDED** that the Court: 1) **DISMISS** the case without prejudice; 2) **DENY** all pending motions as moot; and 3) direct the Clerk to close the case.

This case concerns an attempt by an employer to have the Court determine in the first instance who is a proper beneficiary to a decedent employee's retirement funds held in an employee pension benefits plan, *i.e.* a 401(k) plan, which is governed under the Federal Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et. seq.* Doc. No. 1. The District Court has referred the employer's motion for leave to deposit the funds at issue with Clerk (the "Motion") (Doc. No. 16) to the undersigned for a report and recommendation. Doc.

No. 18 at 1-2.[1]  In examining the Motion, and the additional issues referred to the undersigned, which are outlined below, the Court necessarily examines subject matter jurisdiction and ripeness.  For the reasons discussed below, the Court concludes that subject matter jurisdiction is lacking, this matter is not ripe and the case should be dismissed.

## I.   BACKGROUND.

### A.  The Complaint.

On June 29, 2012, Plaintiff Cooperativa De Seguros Multiples, filed a complaint (the "Complaint") for interpleader "under the provisions of [ERISA]." Doc. No. 1 at 1.[2]  The Complaint names B.Q., a minor child, Andrea Ramon, Henry Ramon, and Mario Alberto Quiroga as Defendants.  Doc. No. 1 at 1.  The Complaint contains no allegations of citizenship as to any of the Defendants.  Doc. No. 1.[3]  Plaintiff is a corporation organized under the laws of the Commonwealth of Puerto Rico with its principal place of business in Puerto Rico.  Doc. No. 1 at ¶ 1.[4]  Plaintiff provides its employees with a 401(k) savings plan (the "Plan"), which, as an employee pension benefits plan, is governed under the provisions of ERISA.  Doc. No. 1 at ¶ 2.[5]  As discussed in more detail below, Plaintiff attached copies of certain Plan documents to the Complaint, but Plaintiff did not attach a copy of the entire Plan.  Doc. No. 1-1 at 1-6.

Isabel M. Rivera (the "Decedent"), a resident of Orange County, Florida, became an employee of Plaintiff on February 11, 2003, and enrolled as a participant in the Plan.  Doc. No. 1

---

[1] The District Court also referred issues relating to conflict of interest, whether a prior order of the District Court should be set aside, and, if so, whether one of the Defendants, Mario Alberto Quiroga is a necessary and indispensable party to the undersigned for a report and recommendation.  Doc. No. 18 at 1-2.

[2] The Complaint contains no other statement with respect to the Court's subject matter jurisdiction.  Doc. No. 1.

[3] As set forth below, the Complaint alleges that Mr. Quiroga's whereabouts are unknown.  Doc. No. 7 at ¶ 7.

[4] For the purposes of this report and recommendation, the Court accepts the facts alleged in the Complaint as true except as otherwise specifically indicated herein.

[5] The Complaint does not allege which provision(s) of ERISA govern the Plan.  Doc. No. 1.

at ¶ 3.   Attached to the Complaint is an Enrollment Form, which states that the Decedent agrees
to the following Plan Beneficiary Statement:

> Unless a beneficiary designation by me is in effect at the time an
> amount becomes payable, any amount which becomes payable to
> my Beneficiary under the Plan shall be payable to the first
> surviving class of the following: (A1) Widow or Widower; [and]
> (A2) Surviving Children. . . .

Doc. No. 1-1 at 5.   Thus, the Plan Beneficiary Statement on the Enrollment Form provides that
unless a beneficiary designation made by the Decedent is in effect at the time any amount
becomes payable, the Plan shall be payable first to the Decedent's widower and then surviving
children.  *Id*.

The Complaint alleges that at the time the Decedent enrolled in the Plan, she was not
married and had two minor children, who have now reached the age of majority - Andrea Ramon
and Henry Ramon.  Doc. No. 1 at ¶ 3.  On February 24, 2003, the Decedent signed a designation
of beneficiary form, which, although written in Spanish, appears to name the Ramons each as
50% beneficiaries of the Plan proceeds.  Doc. No. 1-1 at 4.  The designation of beneficiary form
also appears to state that the Decedent was not married at the time the form was completed.  *Id*.
On March 18, 2004, the Decedent completed an identical designation of beneficiary form in
Spanish.  Doc. No. 1-1 at 3.   Plaintiff did not attach English translations of the designation of
beneficiary forms to the Complaint.[6]

Sometime in 2004, the Decedent gave birth to B.Q., a minor child with "legal
disabilities."  Doc. No. 1 at 1, 2 ¶ 6.[7]  On December 20, 2004, the Decedent married Mario
Alberto Quiroga in Kissimmee, Florida.  Doc. No. 1 at 2.   The Complaint alleges that "in the

---

[6] *See Rivas-Montano v. United States*, Case No. 8:03-cr-47-T-24EAJ, 2006 WL 1428507 at *1 (M.D. Fla. May 22, 2006) (noting that parties are required to translate all foreign language documents into English and citing authority).

[7] B.Q.'s date of birth is redacted in the Complaint.  Doc. No. 1 at ¶ 6.  *But see* Doc. No. 16-3 at ¶ 2 (Motion providing B.Q.'s birth date).

year 2004, Mr. Quiroga abandoned his family." Doc. No. 1 at ¶ 7.[8] Plaintiff contends that Mr. Quiroga's "whereabouts are unknown." Doc. No. 1 at ¶ 7.[9] The Decedent died on June 14, 2011. Doc. No. 1 at ¶ 8. Plaintiff alleges that it "has no knowledge of the civil status of the [Decedent] at the moment of her death," and "it is not known if at the time of [death] she and Mr. Quiroga were still married." Doc. No. 1 at ¶¶ 8-9.

Plaintiff states the Plan holds $30,506.29 on the Decedent's behalf, and the Decedent did not make any changes to beneficiary designations prior to her death. Doc. No. 1 at ¶¶ 10-11. The Complaint alleges that the Decedent died intestate. Doc. No. 1 at ¶ 11.[10] Without citation to any legal authority, Plaintiff alleges that ERISA "appears to state that in the event of a death of a participant in a 401(k) plan, all the benefits should be paid to the surviving spouse, except in those cases where the spouse has voluntarily agreed that the participant designate a different beneficiary." Doc. No. 1 at ¶ 12. Thus, Plaintiff alleges that ERISA requires, in the absence of a written waiver by the surviving spouse, that proceeds of a participant's 401(k) plan must be paid to the surviving spouse regardless of any beneficiary designation to the contrary. *Id.* Plaintiff contends that Article IX of the Plan, as well as the Summary Plan Description, reflect the above stated requirement. Doc. No. 1 at ¶ 12. Although the Complaint states otherwise, Plaintiff did

---

[8] In the Motion, <u>Plaintiff states that Mr. Quiroga abandoned the Decedent and B.Q. in "the early part of 2009."</u> Doc. No. 16-3 at ¶ 3 (emphasis added). The Complaint and the Motion are in conflict with respect to when Plaintiff alleges that Mr. Quiroga abandoned the family. *Compare* Doc. No. 1 at ¶ 7 *with* Doc. No. 16-3 at ¶ 3.

[9] Plaintiff states that the Ramons "believe [Quiroga] returned to Argentina, to avoid child support payments." Doc. No. 1 at ¶ 7.

[10] Plaintiff appears to now concede that the Decedent died testate, *i.e.* with a valid will. *See* Doc. Nos. 17 at 2 ¶ 5 (stating that the Decedent died testate); 32 at 1-11 (a copy of the last will and testament of the Decedent); 34 at 5 (stating that Plaintiff "adopts all exhibits and the arguments provided by [B.Q., Ms. Ramon, and Mr. Ramon].").

not attach the Summary Plan Description to the Complaint.   *Id.* The record does not contain the Plan, Article IX, or the Summary Plan Description.[11]

Plaintiff states that "[e]ach Defendant has demanded that Plaintiff pay the 401k [sic] funds to that Defendant."  Doc. No. 1 at ¶ 14.  Thus, the Complaint alleges that Mr. Quiroga has made a claim to the funds.  Doc. No. 1 at ¶ 14.   Plaintiff states that it has no interest in the proceeds of the funds at issue and it "did not cause the conflicting claims," but it "cannot determine which Defendant(s) are entitled to the proceeds . . . and runs the risk of paying the proceeds twice if [it] makes the wrong decision."  Doc. No. 1 at ¶¶ 13, 15.  Thus, Plaintiff acknowledges that it has made no decision regarding the proper beneficiaries.  Doc. No. 1 at ¶ 15.   Plaintiff requests that the Court enter "an Order of Interpleader after the Court has ascertained the amount, if any, to which Defendants/Claimants are entitled," award Plaintiff its attorneys' fees and costs, and to distribute the funds at issue.  Doc. No. 1 at 4.

## B.  Procedural History.

On November 5, 2012, Darylaine Hernandez, Esq., entered an appearance on behalf of Ms. Ramon, Mr. Ramon and B.Q.  Doc. No. 10.  On November 6, 2012, the Court entered an order directing Plaintiff to show cause why the action should not be dismissed as to Mr. Quiroga for want of prosecution and failure to comply with Rule 4(m), Federal Rules of Civil Procedure. Doc. No. 11.  Plaintiff did not file a timely response to the order to show cause and the Court, on November 30, 2012, terminated Mr. Quiroga as a party.  Doc. No. 13.[12]  On February 15, 2013, Plaintiff filed an untimely response to the Courts November 30, 2012, order to show cause.  Doc.

---

[11] Plaintiff did attempt to file Article IX of the Plan in an improper reply (Doc. No. 20) to B.Q., Ms. Ramon, and Mr. Ramon's Answer, but, on April 4, 2013, the Court entered an order striking the reply and its exhibits.  Doc. No. 23 at 2.  Thus, the Plan, Article IX, and the Summary Plan Description have never been properly filed with Court for its consideration.

[12] The Court's order referring this matter requests that the undersigned provide a recommendation as to whether the Court's November 30, 2012 order should be set aside.  Doc. No. 18 at 2.

No. 19.  In the response, Plaintiff states since October of 2011, it has attempted to communicate with Mr. Quiroga with no success, but, at some point, Plaintiff learned that he moved to the "township of Chimba, City or Region named San Juan, Argentina."  Doc. No. 19.  Plaintiff states that on September 12, 2012, it "served process" on Blanca E. Altaro, Mr. Quiroga's mother, by Federal Express in Argentina.  Doc. No. 19 at 2.   To date, Plaintiff has not filed an executed return of service on Mr. Quiroga.

On February 7, 2013, Plaintiff filed the Motion, requesting leave to deposit the proceeds of the Decedent's 401(k) savings plan, $30,506.29, into the court's registry.  Doc. No. 16-3.  In the Motion, Plaintiff reiterates the allegations in the Complaint concerning the Decedent's employment, the Plan, her death, and the named beneficiaries of her 401(k) savings plan, except that Plaintiff states for the first time that the Plan is underwritten by AXA Equitable Life Insurance Company ("AXA").  Doc. No. 16-3 at 1.[13]  The Motion states that Mr. Quiroga announced in early 2009 that he had a family in Argentina and that he needed to return to there. Doc. No. 16-3 at 2 ¶ 3.  Plaintiff further states that the only contact with Mr. Quiroga has been through "e-mails plus the papers from this lawsuit which were delivered to him by FEDEX on September 12, 2012."  Doc. No. 16-3 at 2 ¶ 3.  Plaintiff indicates that it attempted to deposit the proceeds of the Decedent's 401(k) savings plan in July 2012, but the Clerk would not accept the funds because none of the Defendants had been served.  Doc. No. 16-3 at 2 ¶ 4.  In the Motion, Plaintiff represents that "[a]ll defendants have now been served."  Doc. No. 16-3 at 2.

On February 14, 2013, Ms. Ramon, Mr. Ramon and B.Q. filed their answer and affirmative defenses.  Doc. No. 17.  In their answer, Ms. Ramon, Mr. Ramon and B.Q. (collectively, the "Children"), deny that the Decedent married Mr. Quiroga or that Mr. Quiroga

---

[13] Based upon the record, and without a copy of the Plan, the Court is uncertain if AXA is the Plan's administrator, a fiduciary, or just the Plan's insurer.

has filed a claim for the proceeds of the Plan.  Doc. No. 17 at 1 ¶¶ 2, 4.  As affirmative defenses, the Children allege that: the proceeds of the 401(k) savings plan are rightfully theirs by virtue of the Decedent's last will and testament; Decedent's marriage to Mr. Quiroga was void due to bigamy by Mr. Quiroga's pre-existing marriage in Argentina; Decedent's marriage to Mr. Quiroga was void due to efforts by the Decedent to divorce Mr. Quiroga before her death; Mr. Quiroga is not entitled to any portion of the Plan's proceeds because he cannot be found; and Mr. Quiroga's parental rights to B.Q. are automatically terminated due to abandonment.  Doc. No. 17 at 2-3.  At the time the Children filed their answer, they were represented by the same counsel.[14]

On April 2, 2013, Andrea Ramon filed an "Affidavit . . . regarding the facts of her mother's marriage."  Doc. Nos. 22, 22-1.   In her affidavit, Ms. Ramon states that she believes the Decedent's marriage to Mr. Quiroga was void for bigamy because Mr. Quiroga had a pre-existing marriage in Argentina that was unknown to the Decedent.  Doc. No. 22-1 at 1 ¶ 2.  Ms. Ramon states that she had a conversation with the Decedent wherein the Decedent stated she did not know Mr. Quiroga was already married and was devastated to learn he would be returning to his family in Argentina.  Doc. No. 22-1 at 1 ¶ 3.  Ms. Ramon further states that Mr. Quiroga abandoned B.Q. and, therefore, his parental rights have been terminated by operation of Florida law.  Doc. No. 22-1 at 2 ¶ 4.  Ms. Ramon also states she is B.Q.'s guardian.  Doc. No. 22-1 at 2 ¶ 5.

On February 15, 2013, the District Court referred the Motion and the following matters for an order or report and recommendation:

> 1.   Defense counsel's potential conflict of interests from representing B.Q. (a disable minor), Andrea C. Ramon, and

---

[14] On February 22, 2013 and April 11, 2013, Plaintiff, without seeking leave of Court, filed replies to the Children's answer and affirmative defenses. Doc. Nos. 20, 24.  Both replies and all attachments thereto were stricken by the Court. Doc. Nos. 23, 25.

Henry Paul Ramon when all three defendants are claiming rights to the interpleaded funds;

2. The potential conflict of interest of Andrea C. Ramon from acting as guardian and representative of B.Q. (a disable minor) in this action when both are independently asserting rights to the interpleaded funds;

3. The necessity of an appointment of a guardian ad litem for the disabled minor, B.Q.;

4. The effect, if any, of an after born child on the 401K Beneficiary Designation;

5. The effect of any will on the beneficiary designation;

6. Whether Mario Alberto Quiroga is an necessary and indispensable party;

7. Whether the termination of Mario Alberto Quiroga should be set aside;

8. Whether Plaintiff should be required to locate and serve Mario Alberto Quiroga; and

9. Whether this action can proceed without Mario Alberto Quiroga and if so, whether all three remaining defendants agree as to a distribution of interpleaded funds at issue.

Doc. No. 18 at 1-2.

On April 22, 2013, the Court ordered the Children to file a memorandum supported by affidavit or other evidence showing why their counsel should not be disqualified from representing B.Q. due to the conflict of interest arising from her joint representation of B.Q., Ms. Ramon and Mr. Ramon.  Doc. No. 26 at 9.  The Court also ordered counsel to show why a guardian ad litem should not be appointed for B.Q.  Doc. No. 26 at 9.  On April 30, 2013, counsel moved to withdraw from representing B.Q. and notified the Court that the parties agreed that Karol Nunez, Esq., would serve as B.Q.'s guardian ad litem.  Doc. No. 27.  On May 2, 2013, Ms. Nunez filed her notice of appearance on B.Q.'s behalf.  Doc. No. 28.  On May 3, 2013, the

Court granted Ms. Hernandez's motion to withdraw.  Doc. No. 29.  Thus, the conflict of interest issues have been resolved.

On May 7, 2013, the undersigned entered an order directing the Plaintiff and the Children to meet and confer on the issues of whether Mr. Quiroga is a necessary and indispensable party, whether the order terminating him as a party should be set aside, and whether Plaintiff should be required to locate and serve Mr. Quiroga.  Doc. No. 30 at 5.  On May 31, 2013, the Ramons filed a response to the order.  Doc. No. 32.  The Ramons maintain that the Decedent's will controls and provides that the Children are beneficiaries under the Plan.  Doc. No. 32 at 1.

The Ramons argue somewhat incongruently that: Mr. Quiroga is not a necessary and indispensable party; he was named as a Defendant in error; Plaintiff did not know of Mr. Quiroga's prior marriage at the time the Complaint was filed; the prior order terminating Mr. Quiroga should not be set aside; Plaintiff properly served Mr. Quiroga; Plaintiff should not be required to properly serve Mr. Quiroga; and service upon Mr. Quiroga is not necessary because his marriage to the Decedent is *void ab initio* under Florida law.  Doc. No. 32 at 2-6 (citing *Reese v. Reese*, 192 So.2d 1 (Fla. 1996); *Baggs v. Pate*, 824 So.2d 1038 (Fla. 1st DCA 2002); *Evans v. Evans*, 212 So.2d 107 (Fla. 4th DCA 1968); *Jones v. Jones*, 161 So. 836 (Fla. 1935); *Reese v. Reese*, 178 So.2d 913 (Fla. 3d DCA 1965); *Gaines v. Relf*, 53 U.S. 472 (1851); *Doherty v. Traxler*, 66 So.2d 274 (Fla. 1953); *Loughran v. Loughran*, 292 U.S. 216 (1934)).[15]  In addition,

---

[15] The undersigned notes that the Ramons did not provide any pinpoint citations to the cases relied upon, and the Court is left to hunt through each case looking for the proposition or rule for which the Ramons have cited the cases. *See Reese v. Herbert*, 527 F.3d 1253, 1260 (11th Cir. 2008) ("[J]udges are not like pigs, hunting for truffles buried in briefs."). Simply put, it is not the Court's duty to waste its limited resources searching for something that could easily be supplied by the parties. *Id.*  Moreover, many of the citations contain significant errors. For example, the Ramons cite "*Baggs v. Pate*, 824 So.2d 1038 (Fla. 2002)" for the proposition that Mr. Quiroga is not an indispensable party. Doc. No. 32 at 3 (emphasis added). The citation indicates that *Baggs* was decided by the Florida Supreme Court. *Id.* However, *Baggs* was a decision issued by Florida's First District Court of Appeal and held that legal fathers are not indispensable parties to paternity actions naming the putative father as a defendant. 824 So.2d at 1039. More importantly, the holding in *Baggs* was specifically disapproved by the Florida Supreme Court in *Preston v. Cummings*, 930 So.2d 604, 609 (Fla. 2006), which held that legal fathers are indispensable

the Ramons maintain that Mr. Quiroga's parental rights to B.Q. have been terminated, not by a judgment of any Florida court, but by operation of law.  Doc. No. 32 at 3 (citing *In re Adoption of Baby E.A.W.*, 658 So.2d 961 (Fla. 1995); *Baggs v. Pate*, 824 So.2d 1038 (Fla. 1st DCA 2002)).  The Ramons state that they and B.Q. have reached an agreement to evenly distribute the Plan proceeds amongst themselves pursuant to the terms of the Decedent's will.  Doc. No. 32 at 5.  Thus, the Ramons request that the Court: 1) not set aside the order terminating Mr. Quiroga; 2) not hold an evidentiary hearing; 3) grant the Motion and direct the Plaintiff to deposit the Plan proceeds into the registry of the Court; and 4) direct the Clerk to remit the proceeds to the Decedent's estate.  Doc. No. 32 at 6.  The Ramons attach the following in support of their position: the Decedent's designation of beneficiary forms, in Spanish; a copy of the Decedent's will; the affidavit of Ms. Ramon, which was previously filed (Doc. No. 22-1); and an email exchange in Spanish allegedly from Mr. Quiroga to Ms. Ramon and an English translation of the same.  Doc. Nos. 33-1, 33-2, 33-3, 33-5.[16]

On June 3, 2013, B.Q. filed a response to the Court's order, which is substantially identical to the Ramons' response.  Doc. No. 33.[17]  B.Q. requests that Mr. Quiroga status remain

---

parties to any action to determine paternity unless a prior judgment divested the legal father of his rights to the child. Thus, the law in Florida is the opposite of what the Ramons suggest.

[16] The email from Mr. Quiroga does not acknowledge a prior marriage, but states that Mr. Quiroga committed certain unspecified errors and caused the Decedent harm.  Doc. No. 32-5.

[17] The only material difference is that B.Q. cites some different cases for the same propositions.  *See* Doc. No. 33 at 2-3.  Similarly, B.Q. fails to provide pinpoint citations to the proposition or rule of law relied upon.  *Id*.  In addition, B.Q. cites to certain cases which do not stand for or have no relation to proposition for which they are cited or to any issue in this case.  For example, B.Q. relies upon *Preston v. Cummings*, 871 So.2d 1055 (Fla. 2d DCA 2004) for the proposition that Mr. Quiroga is not a necessary party.  Doc. No. 33 at 2-3.  However, *Cummings* stands for the proposition that legal fathers are indispensable parties to paternity suits.  871 So.2d at 1062, *aff'd* 930 So.2d 604 (Fla. 2006).  Similarly, B.Q. relies upon and purports to quote from *Jones v. Jones*, 633 So.2d 1096 (Fla. 5th DCA 1994) as holding "'such a marriage is void even in the absence of a judicial decree avoiding same.'"  Doc. No. 33 at 3.  The quotation does not appear in *Jones* and, moreover, *Jones* concerned a custody dispute between a divorced couple and has no bearing on any issue in this case.  633 So.2d at 1097-1100.

terminated, a hearing not be held, and that the Court allow the parties to resolve all remaining issues as to the Plan proceeds.  Doc. No. 33 at 6.

On June 4, 2013, Plaintiff filed its response to the Court's order.  Doc. No. 34.  In the response, Plaintiff states that a copy of the Decedent and Mr. Quiroga's marriage license is "on file."  Doc. No. 34 at 2.  However, although a copy of the marriage license was attached to Plaintiff's improperly filed reply to the Children's answer, the reply along with all attachments thereto was stricken by the Court.  *See* Doc. Nos. 20-3 at 4; Doc. No. 23.  Therefore, the record before the Court does not contain a copy of the marriage license.

Plaintiff states that after the Decedent's death unspecified "inquiries were made relative to her social status and when informed that she was married, the Carrier for the 401(k) account did not have a change of beneficiary on file."  Doc. No. 34.  Plaintiff does not identify who made the inquiries or define the "Carrier."  Doc. No. 34 at 3.  Plaintiff again asserts that Mr. Quiroga received a copy of the summons and Complaint through service upon his mother by Federal Express.  Doc. No. 34 at 3.

Plaintiff generally contends, without citation to any legal authority, that a surviving spouse is entitled to proceeds of a 401(k) plan when the other named beneficiaries were not properly designated.  Doc. No. 34 at 4.  Plaintiff states:

> Our issue at this juncture is to determine whether or not the "alleged marriage" of [the Decedent] and Mr. Quiroga has any validity in the State of Florida.  Our response to said inquiry is that the Kissimmee "marriage" has NO validity for any purpose.

Doc. No. 34 at 4.  Plaintiff states that it "adopts all exhibits and arguments provided by counsel for the [Children]."  Doc. No. 34 at 5.

Plaintiff maintains that Mr. Quiroga is not an indispensable party and "he in fact should not have been considered a spouse."  Doc. No. 34 at 4.  Therefore, based on Plaintiff's response,

including Plaintiff's wholesale adoption of all of the Children's arguments, Plaintiff now maintains that Mr. Quiroga is not a surviving spouse under the terms of the Plan or Florida law, and it improperly named Mr. Quiroga as a defendant in this case. Doc. No. 34 at 4-5.  Plaintiff requests that the Court grant the Motion, permit it to deposit the proceeds of the Plan into the registry of the Court, and to permit the parties to agree on the appropriate distribution of the funds. Doc. No. 34 at 5.   Plaintiff also requests attorneys' fees and costs.  Doc. No. 34.

## II.   ANALYSIS.

### A.  Subject Matter Jurisdiction.

Although the Complaint alleges that it is an interpleader action brought under unspecified provisions of ERISA, it contains no short and cogent statement of the Court's subject matter jurisdiction.  Doc. No. 1.[18]  The Complaint is unclear as to whether it is alleging subject matter jurisdiction as an interpleader action, under ERISA, or both because ERISA does not contain specific cause of action for interpleader.  Doc. No. 1 at 1.  For example, if Plaintiff is alleging subject matter jurisdiction as an interpleader action, the Complaint fails to allege whether it is brought pursuant to Rule 22 and/or 28 U.S.C. § 1335, both of which have different requirements to invoke the Court's subject matter jurisdiction. Doc. No. 1.[19]  If Plaintiff is alleging subject matter jurisdiction under ERISA, the Complaint fails to allege which particular provision(s) of ERISA bestows the Court with subject matter jurisdiction over this action or gives Plaintiff, as an

---

[18] Federal courts are courts of limited jurisdiction and are "obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005).  To properly demonstrate subject matter jurisdiction, "the pleader must affirmatively allege facts demonstrating the existence of jurisdiction and include a short and plain statement of the grounds upon which the court's jurisdiction depends." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

[19] Pursuant to Rule 22, Federal Rules of Civil Procedure, rule interpleader requires complete diversity between the disinterested stakeholder and the claimants.  *See Allstate Insurance Company v. Young*, 923 F.Supp. 1559, 1561-62 (S.D. Ga. 1996) (citing authority).    28 U.S.C. § 1335 is commonly referred to as statutory interpleader and it requires minimal diversity among at least two adverse claimants.   *Young*, 923 F.Supp. at 1561-62.

employer, standing to bring suit. Doc. No. 1 at 1.[20]   Accordingly, as a threshold matter, the Complaint does not comply with Rule 8, Federal Rules of Civil Procedure, because it fails to adequately demonstrate the Court's subject matter jurisdiction.[21]

**B. Ripeness.**

In the Complaint, the Plaintiff acknowledges that no decision was ever made regarding the proper beneficiaries under the terms of the Plan.  Doc. No. 1 at ¶ 15.  Plaintiff has not provided a copy of the Plan or the Summary Plan Description to the Court and, therefore, the Court is unaware of the Plan administrator's obligations under the Plan.[22]   Nevertheless, the Eleventh Circuit has stated "[f]or purposes of ERISA a cause of action does not accrue until an

---

[20] For example, the Complaint does not identify Plaintiff as the Plan administrator or a fiduciary, but identifies Plaintiff only as the Decedent's employer, who provides its employees with a 401(k) plan.  Doc. No. 1 at ¶ 2.  If Plaintiff's action is brought pursuant to Section 502(a)(1)(B) of ERISA to recover benefits under the terms of the Plan or to enforce rights under the Plan, only "participants" or "beneficiaries," as those terms are defined under ERISA, have standing to bring suit.  *See* 29 U.S.C. § 1132(a)(1)(B); *Dime Coal Company, Inc. v. Combs*, 796 F.2d 394, 397 (11th Cir. 1986) ("Section 502(a) of ERISA expressly provides that [only] certain enumerated individuals may bring civil suits to enforce obligations arising under . . . employee benefit plans.").  Indeed, Section 502(a) of ERISA "does not authorize contributing employers to bring any kind of civil suit at all."  *Combs*, 796 F.2d at 397.  Therefore, the Complaint utterly fails to plead sufficient facts demonstrating that this Court has subject matter jurisdiction under any particular provision of ERISA and that Plaintiff, as only an employer, has standing to bring the suit.

[21] While Plaintiff may be able to establish the Court's subject matter jurisdiction under Rule 22, 28 U.S.C. § 1335 and/or under ERISA, the Complaint clearly fails to do so.  Doc. No. 1.  This failure is significant because the Plaintiff "is the master of its complaint [and] the Court is not charged with framing the Plaintiff's complaint." *Young*, 923 F.Supp. at 1562.  Moreover, Plaintiff now concedes that certain allegations in the Complaint are not accurate.  For example, Plaintiff now asserts or concedes that the Decedent died testate, Mr. Quiroga abandoned the family in 2009, Mr. Quiroga never made a claim for the proceeds of the Plan, and the Decedent and Mr. Quiroga were never legally married, all of which are contrary to the allegations in the Complaint.  *See* Doc. Nos. 16-3 (asserting that Mr. Quiroga abandoned the family in 2009, and he resides in Argentina); 34 at 4-5 (adopting "all exhibits and arguments" of the Children, which necessarily includes the allegation that Mr. Quiroga never made a claim for the funds (*see* Doc. No. 17 at ¶ 4), and expressly arguing that Mr. Quiroga and the Decedent were never legally married and the marriage has "NO validity for any purpose.").  However, Plaintiff has never moved to amend the complaint to correct those allegations.  Rule 11, Federal Rules of Civil Procedure, places an affirmative duty on counsel to remove all unreasonable or inaccurate claims from a pleading. Fed.R.Civ.P. 11(b).  *See also Oravec v. Sunny Isles Luxury Ventures, L.C.*, 2010 WL 1302914 at *7 n. 18 (M.D. Fla. Mar. 31, 2010) (same).  Accordingly, unless Plaintiff amends the complaint, counsel may be subject to sanctions for violating Rule 11.

[22] Indeed, based upon the Complaint and the record the Court is unaware of the Plan administrator's identity.

application [for benefits under the plan] is denied." *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1525 (11th Cir. 1987).

The undersigned finds *Harris Corporation v. Dunn, et. al.*, Case No. 6:05-cv-1388-Orl-28DAB, Doc. Nos. 29, 42, 51 (M.D. Fla. 2006) instructive on the issue of whether this matter is ripe for the Court's adjudication.[23]   In *Harris*, the plaintiff plan administrator brought a complaint for interpleader under Rule 22, Federal Rules of Civil Procedure and pursuant to 29 U.S.C. § 1132(a)(3) of ERISA in an effort to determine the proper beneficiaries of proceeds from a retirement account of a deceased former employee.  Doc. Nos. 1 at 1-2; 29 at 1-3.  The plaintiff specifically alleged that it was the plan administrator and plan fiduciary.  Doc. No. 1 at 2.  The plaintiff also attached significant portions of the plan to the complaint.  *See* Doc. Nos. 1-1, 1-2, Doc. No. 29 at 3.  Like most employee retirement benefit plans, the plan had a specific procedure for the plan administrator to follow in making determinations and interpretations of the plan's terms.  Doc. No. 29 at 3-4.  Pursuant to the terms of the plan, with respect to claims of beneficiaries, the plan administrator was required to make an initial decision followed by an administrative appeal procedure.  Doc. No. 29 at 4.  Once a final decision was made, the plan required the administrator to notify the beneficiary claimant of his or her right to bring a civil action pursuant to Section 502(a) of ERISA.  Doc. No. 29 at 4.  Thereafter, any aggrieved party could pursue its rights in court, but not before.  Doc. No. 42 at 5 (citing 29 U.S.C. § 1132(a) (providing for court review of administrative determinations of a plan administrator)).

Instead of following the administrative procedure of the plan, the plaintiff filed an interpleader action immediately after making an initial beneficiary claim decision.  Doc. No. 29 at 4.  The Court, citing *Gulf Life*, 809 F.2d at 1525, reasoned that allowing the plan administrator

---

[23] In this sub-section all remaining citations to docket entries refer to Case No. 6:05-cv-1388-Orl-28DAB until otherwise indicated.

to opt out of its express duty under the plan, prematurely place the matter before the Court, and collect attorneys fee for doing so was "unfair and markedly inconsistent with the review procedure set forth in ERISA and the Plan."  Doc. No. 29 at 6-7.  Accordingly, the Court directed the plaintiff to show cause in writing why the case should not be dismissed for failure to state a ripe case or controversy.  Doc. No. 29 at 7.

After receiving the plaintiff's response, the Honorable Magistrate Judge David A. Baker entered a report recommending that the case be abated in order to allow the plaintiff to complete its duty to entertain the administrative appeal and to issue a final determination, which could then be reviewed by the Court under ERISA.  Doc. No. 42 at 6-7.  Judge Baker noted that an "alternative would be to dismiss the action as premature without prejudice to refiling, if necessary, after completion of the internal appeal process."  Doc. No. 42 at n. 6.  Since all the parties had been served and made an appearance, however, Judge Baker recommended abatement rather than dismissal without prejudice.  *Id.*  The District Court adopted Magistrate Judge Baker's recommendation and the case was abated pending resolution of the administrative process.  Doc. No. 51.

In this case, the Complaint alleges all Defendants have made claims to the proceeds of the Plan.  Doc. No. 1 at ¶ 14 (hereinafter, all docket entry citations refer to this case).[24]  Yet, Plaintiff alleges that no administrative decision has been made as to those claims.  Doc. No. 1 at ¶ 15.  While the Plan is not in the record, the law in this circuit requires a final decision by the plan administrator on a claim for benefits before a cause of action under ERISA accrues.  *Gulf Life*, 809 F.2d at 1525.  The undersigned finds *Harris* persuasive and because it appears that no decision on the beneficiary claims, much less a final decision, was made by the plan

---

[24] As set forth above, Plaintiff appears to now believe that Mr. Quiroga never made a claim for the proceeds.  *See supra* n. 21.

administrator, this matter is not ripe for adjudication.  Moreover, because in this case all the parties are not presently before the Court, the undersigned finds that dismissal of the case without prejudice is proper.[25]

Accordingly**,** it is recommended that the Court: 1) dismiss the case without prejudice; 2) deny all pending motions as moot; and 3) direct the Clerk to close the case.

### C.  The Motion.

For the reasons set forth above, the Complaint and/or the case should be dismissed without prejudice.  Accordingly, it is recommended that the Motion be **DENIED**.

### D.  Mr. Quiroga.

For the reasons outlined in the undersigned's May 7, 2013, order, the undersigned finds that Mr. Quiroga is a necessary and indispensable party, he has not been properly served, and the Court's order terminating him as a party should be set aside.  *See* Doc. No. 30 at 2-3.   However, because the Court lacks subject matter jurisdiction and there is no ripe case and controversy, these issue are moot.

## III.   CONCLUSION.

Based on the forgoing, it is **RECOMMENDED** that the Court:

1. **DISMISS the case without prejudice;**;

2. **DENY** all pending motions as moot (Doc. No. 16-3); and

3. Direct the Clerk to close the case.

---

[25] In the alternative to dismissing the case without prejudice, the Court may dismiss the Complaint for the pleading deficiencies set forth above and, after Plaintiff files an amended complaint and the Plan, then determine whether or not an ERISA cause of action has accrued.   However, because Plaintiff now agrees with all the Children's arguments, including the contention that Mr. Quiroga did not make a claim for the proceeds, he is not an indispensable party, he is not a spouse under Florida law, and he is not entitled to benefits as a surviving spouse under the terms of the Plan, a dismissal without prejudice seems more appropriate as this matter may be resolved at the administrative level without any need for further Court action.  *See* Doc. No. 34 at 4-5.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 16, 2013.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy